United States Court of Appeals
Fifth Circuit

**F I L E D**

**January 24, 2005**

Charles R. Fulbruge III
Clerk

In the United States Court of Appeals

For the Fifth Circuit

_____

No. 04-20418

_____

FRED MACHINCHICK,

                    Plaintiff - Appellant,

                    versus

PB POWER, INC. d/b/a/ PARSONS BRINCKERHOFF,

                    Defendant - Appellee.

_____

Appeal from the United States District Court
For the Southern District of Texas

_____

Before HIGGINBOTHAM, SMITH, and BENAVIDES, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

A recently terminated employee brought suit against his former employer asserting claims for age discrimination pursuant to the Age Discrimination in Employment Act (ADEA) and the Texas Commission on Human Rights Act (TCHRA). Following a hearing, the district court granted the employer's motion for summary judgment with respect to both of the employee's claims. We reverse and remand for trial.

                    I

In 1996, Fred Machinchick was hired by PB Power Inc. to serve as a director of business development in the Houston area. His

primary job duty was to develop new energy sector clients for PB Power. In both 1997 and 1998, he received reviews describing his job performance as "excellent," and was promoted to Vice President in 1998. In December 2001, Jim Knowlton, a Vice President located in PB Power's San Francisco office, became Machinchick's new supervisor. In January 2002, PB Power changed its business development philosophy by implementing a "cradle-to-grave" strategy under which business development personnel such as Machinchick would be required to initiate new business prospects, and shepherd those prospects through the sales process to closing and beyond. Prior to the implementation of this strategy, business development personnel had been required only to develop new prospects, and then turn those prospects over to other PB Power personnel who would prepare sales presentations and close contracts.

In January 2002, PB Power released a business plan in which it described as one of its competitive advantages its intention to "hand-pick employees whose mindset resides [sic] in the 21st Century, who are highly qualified to do their job, and who are motivated toward the success of the company." In an e-mail dated April 7, 2002, Knowlton announced the continuation of his "recruiting plan" to "strategically hire some younger engineers and designers to support and be mentored by the current staff." On April 9, 2002, Knowlton sent an e-mail to Elizabeth Erichsen in PB Power's human resources department delineating Machinchick's shortcomings as an employee, including the accusation that

2

Machinchick possessed "[l]ow motivation to adapt to a rapidly changing business environment and new company management style."

On April 17, 2002, Knowlton informed Machinchick that he was being terminated due to performance concerns. Although PB Power had a written disciplinary policy providing that a supervisor should engage in informal and formal discussions with a problematic employee before termination, Machinchick received no warnings prior to his termination. Machinchick was initially told that his last day at PB Power would be on May 17, 2002, but he later agreed to stay until May 31 to assist with the turnover of his key client base and contacts to Mike Betz, an employee assigned to PB Power's Chicago office. At this time, Machinchick was 63 years old and Betz was 42 years old.

Following his termination, Machinchick sued PB Power in the 189th Judicial District Court of Harris County, Texas, alleging that he had been unlawfully fired because of his age in violation of both the ADEA and the TCHRA. PB Power removed the case to the United States District Court for the Southern District of Texas, and moved for summary judgment. The district court held two hearings on PB Power's motion, and granted it immediately following the second hearing. Machinchick filed a timely notice of appeal.

II

We review a "grant of summary judgment *de novo*, applying the

same standard as the district court."[1]  Summary judgment is appropriate when "there is no genuine issue as to any material fact and . . . the moving party is entitled to a judgment as a matter of law."[2]  In making this determination, "we view the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant."[3]

Machinchick challenges the district court's grant of summary judgment as to both his ADEA claim and his TCHRA claim.  We will review the district court's ruling on each of these claims in turn.

III

A

Under the ADEA, it is unlawful for an employer "to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age."[4]  We have traditionally bifurcated ADEA cases into distinct groups: those in which the plaintiff relies upon direct evidence to establish his case of age

---

[1] *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004).

[2] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986) (quoting FED. R. CIV. P. 56(c)).

[3] *Bryan*, 375 F.3d at 360; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) ("We resolve factual controversies in favor of the nonmoving party, but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts.").

[4] 29 U.S.C. § 623(a)(1).

discrimination, and those in which the plaintiff relies upon purely circumstantial evidence.[5] Plaintiffs presenting direct evidence of age discrimination may proceed under the "mixed-motive" analysis set forth in *Price Waterhouse v. Hopkins*.[6] The mixed-motive analysis requires only that a plaintiff produce direct evidence that "discriminatory animus played a role in the decision at issue," after which the "burden of persuasion shifts to the defendant, who must prove that it would have taken the same action regardless of discriminatory animus."[7]

Plaintiffs producing only circumstantial evidence of discriminatory animus, however, must negotiate the burden-shifting analysis set forth in *McDonnell Douglas Corp. v. Green*.[8] Under *McDonnell Douglas*, a plaintiff must first establish a prima facie case of age discrimination by showing that "(1) he was discharged; (2) he was qualified for the position; (3) he was within the protected class at the time of discharge; and (4) he was either i) replaced by someone outside the protected class, ii) replaced by

---

[5] *See Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2002) ("In employment discrimination cases, a plaintiff may present his case by direct or circumstantial evidence, or both."); *Wallace v. Methodist Hosp. Sys.*, 271 F.3d 212, 219 (5th Cir. 2001) (same); *Russell v. McKinney Hosp. Venture*, 235 F.3d 219, 223 (5th Cir. 2000) (same).

[6] 490 U.S. 228 (1989).

[7] *Sandstad*, 309 F.3d at 896.

[8] 411 U.S. 792 (1973).

someone younger, or iii) otherwise discharged because of his age."[9]
Once the plaintiff establishes a prima facie case, the burden of production shifts to the defendant to proffer a legitimate nondiscriminatory reason for its employment action.[10]

If the defendant meets its burden, the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination.[11] A plaintiff may meet this burden by producing evidence tending to show that the reason offered by the defendant is pretext for discrimination.[12] In *Reeves v. Sanderson Plumbing, Inc.*, the Supreme Court found that a plaintiff need not produce evidence of both pretext *and* actual discriminatory intent to create a fact issue on an ADEA claim, holding instead that "a plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of

---

[9] *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004) (citations and internal quotation marks omitted); *see also Brown v. CSC Logic, Inc.*, 82 F.3d 651, 654 (5th Cir. 1996).

[10] *See*, *e.g.*, *West v. Nabors Drilling USA, Inc.*, 330 F.3d 379, 384 (5th Cir. 2003) (noting that once the plaintiff in an ADEA case has established a prima facie case of age discrimination, the defendant must "produce evidence of a legitimate, nondiscriminatory reason for its decision to terminate [the plaintiff's] employment").

[11] *See Sandstad*, 309 F.3d at 896-97; *Wallace*, 271 F.3d at 219; *Russell*, 235 F.3d at 222-23.

[12] *See Sandstad*, 309 F.3d at 896-97; *Wallace*, 271 F.3d at 219; *Russell*, 235 F.3d at 222-23.

fact to conclude that the employer unlawfully discriminated."[13]

Following the Supreme Court's decision in *Reeves*, we have found that "[e]vidence demonstrating the falsity of the defendant's explanation, taken together with the prima facie case, is likely to support an inference of discrimination even without further evidence of [the] defendant's true motive."[14]

With respect to causation, we have required that a plaintiff advancing an ADEA claim using only circumstantial evidence prove that discriminatory animus was the "determinative basis for his termination."[15] As a practical matter, this requirement dictates that the plaintiff put forward evidence rebutting each one of a

---

[13] 530 U.S. 133, 148 (2000).

[14] *Sandstad*, 309 F.3d at 897; *see Reeves*, 530 U.S. at 148-49 (finding that when determining whether judgment as a matter of law is appropriate with respect to plaintiff's ADEA claim, a court may consider "the strength of the plaintiff's prima facie case, the probative value of the proof that the employer's explanation is false, and any other evidence that supports the employer's case and that properly may be considered on a motion for judgment as a matter of law"); *Evans v. City of Houston*, 246 F.3d 344, 350 (5th Cir. 2001) ("In making her showing on [the] ultimate question [of intentional discrimination], the plaintiff can rely on evidence that the employer's reasons were a pretext for unlawful discrimination, and the factfinder may still consider the evidence establishing the plaintiff's prima facie case and inferences properly drawn therefrom." (citations and internal quotation marks omitted)); *but see Reeves*, 530 U.S. at 148 (noting that in rare circumstances, showing of pretext may not be sufficient to infer discrimination, such as when "the record conclusively reveal[s] some other, nondiscriminatory reason for the employer's decision, or if the plaintiff created only a weak issue of fact as to whether the employer's reason was untrue and there was abundant and uncontroverted independent evidence that no discrimination occurred").

[15] *Rachid*, 376 F.3d at 310; *see also Reeves*, 530 U.S. at 141 ("When a plaintiff alleges disparate treatment, 'liability depends on whether the protected trait (under the ADEA, age) actually motivated the employer's decision.' That is the plaintiff's age must have 'actually played a role in [the employer's decisionmaking] process and had a determinative influence upon the outcome.'" (quoting *Hazen Paper Co. v. Biggins*, 507 U.S. 604, 610 (1993))); *West*, 330 F.3d at 385 ("The plaintiff must prove that age 'actually plated a role in' and 'had a determinative influence on' the employer's decision-making process." (citations and internal quotation marks omitted)).

7

defendant's nondiscriminatory explanations for the employment decision at issue.[16] Thus, a plaintiff relying upon evidence of pretext to create a fact issue on discriminatory intent falters if he fails to produce evidence rebutting all of a defendant's proffered nondiscriminatory reasons. This approach differs from that used in the mixed-motive analysis, under which a plaintiff need only prove that discriminatory animus was a "motivating factor" in an adverse employment decision.[17]

In *Rachid v. Jack in the Box*, *Inc.*, we altered our ADEA jurisprudence in response to the Supreme Court's decision in *Desert Palace v. Costa*[18] by holding that direct evidence of discrimination is not necessary in order for a plaintiff to receive a mixed-motive analysis for an ADEA claim.[19] We developed an "integrated" or "modified *McDonnell Douglas*" approach under which a plaintiff seeking to establish an ADEA claim using circumstantial evidence must still demonstrate a prima facie case of

---

[16] *See Wallace*, 271 F.3d at 220 ("The plaintiff must put forward evidence rebutting each of the nondiscriminatory reasons the employer articulates."); *Rutherford v. Harris County*, 197 F.3d 173, 184 (5th Cir. 1999) (A plaintiff "must provide some evidence, direct or circumstantial, to rebut each of the employer's proffered reasons and allow the jury to infer that the employer's explanation was a pretext for discrimination." (quoting *Scott v. Univ. of Miss.*, 148 F.3d 493, 504 (5th Cir. 1998), *overruled on other grounds by Kimel v. Fl. Bd. of Regents*, 528 U.S. 62 (2000))); *see also Sandstad*, 309 F.3d at 899 ("[The plaintiff] must point to evidence creating an issue of fact as to the pretextual nature of the [employer's] explanation. Merely disputing [the employer's] assessment of his performance will not create an issue of fact.").

[17] *See Rachid*, 376 F.3d at 309-310.

[18] 539 U.S. 90 (2003).

[19] 376 F.3d at 311.

8

discrimination; the defendant then must articulate a legitimate, non-discriminatory reason for its decision to terminate the plaintiff; and, if the defendant meets its burden of production, the plaintiff must then offer sufficient evidence to create a genuine issue of material fact either (1) that the defendant's reason is not true, but is instead a pretext for discrimination (pretext alternative); or (2) that the defendant's reason, while true, is only one of the reasons for its conduct, and another motivating factor is the plaintiff's protected characteristic (mixed-motive alternative). If a plaintiff demonstrates that age was a motivating factor in the employment decision, it then falls to the defendant to prove that the same adverse employment decision would have been made regardless of discriminatory animus. If the employer fails to carry this burden, plaintiff prevails.[20]

Under this integrated approach, a plaintiff relying on circumstantial evidence has two options for surviving summary judgment in an ADEA case: (1) the plaintiff may offer evidence showing that the defendant's proffered nondiscriminatory reasons are false; or (2) the plaintiff may offer evidence showing that his age was a motivating factor for the defendant's adverse employment decision.

B

Applying the integrated approach, we first find that Machinchick met his initial burden of establishing a prima facie case of age discrimination. He produced uncontroverted evidence that he was qualified for his job,[21] was terminated, and was a

---

[20] *Rachid*, 376 F.3d at 312 (citations, internal quotation marks and alteration omitted).

[21] Machinchick held a bachelor's degree in mechanical engineering from Villanova University, an MBA from Loyola University, and had 35 years of experience in relevant fields. In addition, he had received excellent job reviews and had received no warnings concerning his performance at the time his

member of the protected class at the time of his termination.[22]  PB Power contends that Machinchick failed to meet the fourth prong of his prima facie case – that he was replaced by a younger worker – because it did not hire or reassign an individual to assume his position.  Rather, PB Power contends that Machinchick's position was eliminated following his termination, and that Betz served merely as a temporary intermediary between PB Power and Machinchick's former clients.

We need not decide whether Betz replaced Machinchick because Machinchick may establish the fourth prong of his prima facie case with evidence that he was "otherwise discharged because of his age."[23]  Machinchick presented evidence showing that weeks before he was terminated, Knowlton sent an e-mail to several PB Power employees[24] discussing his intent to go forward with his plan to "strategically hire some younger engineers and designers."  Although PB Power argues that this plan applied only to engineers and designers hired in its San Francisco office, Knowlton testified in his deposition that the hiring plan was represented in PB Power's business plan for 2002 – which applied generally to all of

was terminated.

[22] Under the ADEA, the protected class is limited to persons at least 40 years of age or older.  *See* 29 U.S.C. § 631(a).  As noted above, Machinchick was 63 years old when he was terminated.

[23] *Palasota v. Haggar Clothing Co.*, 342 F.3d 569, 576 (5th Cir. 2003) (quoting *Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993)).

[24] Machinchick, incidentally, was not one of the employees originally copied on the e-mail.

PB Power's operations – via the goal of hiring employees whose mindsets reside in the "21st Century." Taken together, Knowlton's e-mail and PB Power's business plan provide evidence that PB Power intended to assemble a younger workforce, creating an inference that Machinchick's age was a factor in his termination.

Second, Machinchick points to Knowlton's use of "age stereotyping remarks" as evidence that he was terminated because of his age. In his e-mail to Elizabeth Erichsen describing Machinchick's shortcomings, Knowlton claimed that Machinchick had a "[l]ow motivation to adapt" to change. Knowlton expounded upon this claim in his deposition, describing Machinchick as "inflexible," "not adaptable," and possessing a "business-as-usual attitude." We have found that purely indirect references to an employee's age, such as comments that an employee needed to look "sharp" if he were going to seek a new job, and that he was unwilling and unable to "adapt" to change, can support an inference of age discrimination.[25] Thus, Knowlton's description of Machinchick in both his e-mail and deposition gives rise to an inference that Machinchick was terminated because of his age.

Third, Machinchick produced evidence that PB Power treated him

---

[25] *Bienkowski v. Am. Airlines, Inc.*, 851 F.2d 1503, 1507 n.4 (5th Cir. 1988); *see Rachid*, 376 F.3d at 315 ("Comments to look 'sharp' and comments concerning an employee's willingness to 'adapt' to new systems are rather nebulous, but they allowed Bienkowski to avoid summary judgment."); *Hansard v. Pepsi-Cola Metro. Bottling Co.*, 865 F.2d 1461, 1466 (5th Cir. 1989) ("Indirect references to an employee's age can support an inference of age discrimination.").

11

in a disparate manner by terminating him while retaining the younger, similarly situated Mike Betz. Although we do not address whether Betz replaced Machinchick, we find that his retention coupled with Machinchick's termination gives rise to an inference that Machinchick was terminated because of his age.[26]

Fourth, Machinchick presented evidence that, immediately following his first meeting with Knowlton, he was asked by Knowlton when he planned on retiring. This inquiry, although potentially innocuous, constitutes some evidence giving rise to an inference of discriminatory motivation behind Machinchick's termination.[27]

By presenting evidence sufficient to establish a prima facie case of age discrimination, Machinchick shifted the burden of production to PB Power to articulate a legitimate, non-discriminatory reason for its decision to terminate him. PB Power met this burden by alleging that Machinchick was terminated due to his inadequate performance under the new "cradle-to-grave" business plan, his refusal to adapt and modify his personal marketing plan

---

[26] We have found that a plaintiff may satisfy the fourth prong of a prima facie case in a Title VII suit by presenting evidence that he was terminated while "others who were not members of the protected class remained in similar positions." *Meinecke v. H&R Block of Houston*, 66 F.3d 77, 82 (5th Cir. 1995). With respect to ADEA claims, however, we have held that a plaintiff may satisfy the fourth prong of his prima facie case with evidence that he was "otherwise discharged because of his age." *See West*, 330 F.3d at 384; *Palasota*, 342 F.3d at 576. Although the ADEA test differs from the Title VII test, evidence of disparate treatment may still logically suggest a discriminatory motive for purposes of establishing a prima facie case of age discrimination.

[27] *See Guthrie v. J.C. Penney Co.*, 803 F.2d 202, 208 (5th Cir. 1986) (finding that an employer's repeated and harassing inquiries into a 60 year-old employee's retirement plans constituted some evidence of discriminatory intent).

12

in order to implement the cradle-to-grave strategy, and his "business-as-usual" attitude after the new strategy was implemented.[28]

Because PB Power articulated legitimate, non-discriminatory reasons for its decision to terminate Machinchick, the presumption of discrimination created by Machinchick's prima facie case drops from the case, leaving him with the ultimate burden of proving intentional discrimination. As we have observed, *Rachid* provides that an ADEA plaintiff may now meet his ultimate burden by producing circumstantial evidence sufficient to create a fact issue as to whether the employer's non-discriminatory reasons are merely pretext for discrimination, or whether the plaintiff's age was a motivating factor in his employer's decision to terminate him.

Machinchick first contends that he met his ultimate burden by presenting evidence rebutting each of PB Power's non-discriminatory reasons for terminating him. In response to PB Power's allegation that he failed to perform adequately under the cradle-to-grave

---

[28] On appeal, PB Power raised additional reasons such as Machinchick's lack of interest in preparing presentations, habit of continuously marketing old contacts, failure to conduct himself in a professional manner and set a good example for other employees, failure to work well with PB Power's Regional Vice President in Houston, and failure to follow-up on a business development opportunity with Tractebel. Because we can find no indication that these reasons were adequately raised below, we will not consider them on appeal. *See Abbot v. Equity Group, Inc.*, 2 F.3d 613, 629 n.56 (5th Cir. 1993) (limiting review on grant of summary judgment to the "record before the district court when it ruled."); *Topalian v. Ehrman*, 954 F.2d 1125, 1132 n.10 (5th Cir. 1992) ("This court's inquiry is limited to the summary judgment record before the trial court: the parties cannot add exhibits, depositions, or affidavits to support their positions on appeal, nor may the parties advance new theories or raise new issues to secure reversal. Facts not presented at trial cannot be asserted on appeal." (citations omitted)).

marketing plan, Machinchick presented evidence that he had developed five "key prospects" as of April 2002, and had closed a sale to Marathon Oil only months before his termination. In addition, he offered as evidence of his good performance the fact that he was terminated without being afforded a single verbal or written warning pursuant to PB Power's progressive discipline policy,[29] and that he received compliments from Knowlton's superior, Rod Ragan, for his work on the Marathon sale. Finally, he produced evidence that he was given insufficient time to be comprehensively evaluated under the cradle-to-grave plan,[30] and that his accounts were transferred to Mike Betz, a less-experienced employee who had not closed a sale under the cradle-to-grave plan.

PB Power contends that Machinchick's evidence fails to rebut its accusation that he maintained a "business-as-usual" attitude following the implementation of the cradle-to-grave strategy, and that he generally failed to adapt to the new strategy. Machinchick counters that the new philosophy was "not much different" from what he had been doing all along, and that he had "no problem adapting to a new company management style." This evidence is not sufficient to raise a fact issue as to Machinchick's willingness

---

[29] Although PB Power correctly notes that its policy is not mandatory, and that Machinchick was an at-will employee, these facts do not eliminate the inference of pretext raised by its failure to follow an internal company policy specifically stating that it should be "followed in most circumstances."

[30] In his deposition, Mike Betz indicated that it would take six months for an employee to develop a sufficient track record under the cradle-to-grave plan in order to be comprehensively evaluated.

and ability to adapt to the cradle-to-grave strategy.

We need not rest here, however, because Machinchick also argues that he raised a fact issue as to whether his age was a motivating factor in PB Power's decision to terminate him. In a mixed-motive case involving an employment decision based on a "mixture of legitimate and illegitimate motives," the plaintiff need only prove that the illegitimate motive was a motivating factor in the decision.[31] Once the plaintiff meets this burden, the employer may seek to avoid liability by proving that it would have made the same employment decision in the absence of the illegitimate discriminatory motive.[32] The employer's burden on this score is effectively that of proving an affirmative defense.[33]

When considered as a whole, we find that the evidence

---

[31] *Rachid*, 376 F.3d at 310 (citations and internal quotation marks omitted).

[32] *Id*. at 312; *see Mooney v. Aramco Servs. Co.*, 54 F.3d 1207, 1217 (5th Cir. 1995) ("[U]nder [the mixed-motive analysis], once a plaintiff presents direct evidence of discrimination, the burden of proof shifts to the employer to show that the same adverse employment decision would have been made regardless of discriminatory animus.").

[33] *Mooney*, 54 F.3d at 1216 ("Although *Price Waterhouse* can be characterized as a method to prove discrimination, the mixed-motives theory is probably best viewed as a defense for an employer."); *see also Price Waterhouse*, 490 U.S. at 246 ("[T]he employer's burden is most appropriately deemed an affirmative defense: the plaintiff must persuade the factfinder on one point, and then the employer, if it wishes to prevail, must persuade it on another."). By requiring the plaintiff to prove that discrimination was a motivating factor, and then placing the burden of proving that the employment decision would have been made even absent discrimination on the employer, we effectively employ a "but-for" standard of causation. However, once the presence of discrimination as a motive has been established, the burden of persuasion rests with the employer to disprove that such discrimination had a determinative or causal effect upon its decision. *See Price Waterhouse*, 490 U.S. at 249 (noting that a court that finds for the plaintiff under this standard "has effectively concluded that an illegitimate motive was a 'but-for' cause of the employment decision.").

15

presented by Machinchick would allow a reasonable jury to find that his age was a motivating factor in PB Power's decision to terminate him. As a result, PB Power could prevail on summary judgment only by establishing that it would have terminated Machinchick even absent considerations regarding his age. PB Power has neither briefed nor argued this point on appeal.[34] Thus, we find that summary judgment was not proper with respect to Machinchick's ADEA claim.

IV

In his second point of error, Machinchick argues that the district court erred in granting summary judgment on his TCHRA claim. The TCHRA provides that an "unlawful employment practice is established when the complainant demonstrates that . . . age . . . was a motivating factor for an employment practice, even if other factors also motivated the practice."[35] In *Quantum Chemical Corp. v. Toennies*, the Texas Supreme Court held "that 'a motivating factor' is the correct standard of causation for the plaintiff in all TCHRA unlawful employment practice claims," regardless of whether the plaintiff relies on direct or indirect evidence to build his case.[36] Case law following *Toennies* has confirmed that

_____

[34] *See Robinson v. Guarantee Trust Life Ins. Co.*, 389 F.3d 475, 481 n.3 (5th Cir. 2004) ("Failure adequately to brief an issue on appeal constitutes waiver of that argument.").

[35] TEX. LAB. CODE ANN. § 21.125(a) (Vernon 1996) (emphasis added).

[36] 47 S.W.3d 473, 481 (Tex. 2001).

16

at summary judgment, the *McDonnell Douglas* burden-shifting analysis still applies to discrimination claims brought under the TCHRA.[37]

In order to establish a prima facie case of age discrimination under the TCHRA, a plaintiff must prove that she "(1) is a member of a protected class; (2) was discharged; (3) was qualified for the position from which she was discharged; and (4) was either replaced by someone outside the protected class, replaced by someone younger, or was otherwise discharged because of her age."[38] Once the plaintiff establishes a prima facie case, the "burden of production shifts to the employer to articulate a legitimate, nondiscriminatory reason for the disparate treatment."[39] If the employer comes forward with nondiscriminatory reasons for the employment decision, the plaintiff is "required to show either 1) the reasons were not true but, rather, were a pretext for discrimination, or 2) even if the reasons were true, another motivating factor was . . . age."[40]

---

[37] *See Wal-Mart Stores, Inc. v. Canchola*, 121 S.W.3d 735, 739 (Tex. 2003) ("In discrimination cases that have not been fully tried on the merits, we apply the burden-shifting analysis established by the United States Supreme Court."); *accord Kokes v. College*, 148 S.W.3d 384, 391 (Tex. App.–Beaumont 2004, no pet.); *City of Austin Police Dep't v. Brown*, 96 S.W.3d 588, 596 (Tex. App.–Austin 2003, pet. dism'd); *Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 433-34 (Tex. App.–Houston [14th] 2002, pet. denied).

[38] *See Russo v. Smith Int'l, Inc.*, 93 S.W.3d 428, 435 (Tex. App.–Houston [14th] 2002, pet. denied); *Hartis v. Mason & Hanger Corp.*, 7 S.W.3d 700, 705 (Tex. App.–Amarillo 1999, no pet.).

[39] *Kokes*, 148 S.W.3d at 391; *Russo*, 93 S.W.3d at 437.

[40] *Kokes*, 148 S.W.3d at 393. The *Kokes* court phrased this requirement in more general terms as follows: "If the employer meets its burden of production, the only relevant question is whether the plaintiff presented evidence the

17

We can detect no meaningful distinction between this analysis, and the one we now apply to ADEA claims following our decision in *Rachid*. Thus, we find that summary judgment was improper on Machinchick's TCHRA claim for the same reasons that it was improper on his ADEA claim.

V

Because Machinchick presented sufficient evidence to raise genuine fact issues under both the ADEA and the TCHRA with respect to whether his age was a motivating factor in PB Power's decision to terminate him, we reverse the judgment of the district court and remand this case for trial on the merits.

REVERSED and REMANDED for trial.

_____

employer made its decision based on race, gender or age, despite the employer's proffered explanation." *Id*. at 391 (citing *Raytheon Co. v. Hernandez*, 540 U.S. 44 (2003); *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 507-08 (1993)).