United States Court of Appeals
Fifth Circuit

**F I L E D**

October 19, 2006

Charles R. Fulbruge III
Clerk

In the

# United States Court of Appeals
## for the Fifth Circuit

———————

m 05-40883
Summary Calendar

———————

CAROL HOLLAWAY,

Plaintiff-Appellant,

VERSUS

SECRETARY OF ARMY JOHN PAUL WOODLEY, JR.,
DEPARTMENT OF ARMY CORPS OF ENGINEERS,

Defendant-Appellee.

———————

Appeal from the United States District Court
for the Southern District of Texas
m 3:03-CV-904

———————

Before SMITH, WIENER, and OWEN,
   Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

———————

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

Carol Hollaway appeals a judgment, after a bench trial, that is based on a finding that she did not prove by a preponderance of the evidence that the Army Corps of Engineers (the "Corps") discriminated against her on the basis of age in its selection for the position of GS-13 Plan Formulation Specialist. For the reasons stated, we affirm.

## I.

Hollaway was a long term employee of the Corps. She was hired as a GS-9 level social scientist in 1979 and rose to the rank of GS-12 in 1984; she remains a GS-12 level employee. After seeing an advertisement posted in January 2002 for the position of GS-13 Plan Formulation Specialist, Hollaway applied for the position but was not selected. Instead, the selection panel chose Robert Heinly, a younger, less experienced employee, to fill the role. Hollaway sued under the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. §§ 621 *et seq.*, alleging that she had suffered unlawful disparate treatment in the Corps's selection process. *See* § 623(a)(1); *Hazen Paper Co. v. Biggins*, 507 U.S. 604 (1993). After a two-day bench trial, the district court found that the panel that had evaluated candidates did not consider applicants' ages, so the court entered a take-nothing judgment.

The parties agreed that Hollaway was over forty years old at the time of the events in question and was thus a member of a protected class under the ADEA. They also agreed that, in her more than twenty-eight years of service with the Corps, Hollaway had been an exemplary employee who had been nationally recognized for her planning work and had never been reprimanded.

The court found that the Corps had followed its standard practice in appointing a selection panel to evaluate applications. Applicants were first screened for minimum threshold qualifications by the Corps's Civilian Personnel Operations Center, then referred to the selection panel, which had five members: Lloyd Saunders, Division Chief for the Planning, Environmental and Regulatory Division; Richard Medina, Chief of the Planning and Environmental Branch; Diana Laird, Chief of the Planning Section; Dalton Krueger, a project manager in the Project and Programs Division; and Peter Shaw, an employee in the Corps's Southwest Division. Laird chaired the panel.

The panel received nineteen applications after initial screening. Laird instructed the panelists to evaluate the applications according to five criteria: (1) demonstrated expert knowledge of procedures and policies associated with navigation, flood control and ecosystem restoration projects; (2) demonstrated experience in providing plan formulation and policy compliance guidance; (3) ability to provide authoritative advice on water resources planning studies during planning, design and construction phases of complex projects; (4) demonstrated experience directing matrix project delivery planning teams; and (5) demonstrated experience in providing technical reviews of plan development, evaluations and recommendations.

Each panelist was to score each applicant on a twenty-point scale in each category and submit his total scores for each applicant to the rest of the panel; all panelists except Saunders complied with this directive. Saunders, for reasons that remain murky, did not submit his scores. The panel then used the scores as a guideline to establish a rank order of applicants qualified for the position. Although the summed raw scores indicated that Hollaway would have been alone in second place, twenty points ahead of Heinly (who was third), the panel listed them as tied for second behind Robert Van Hook, an older and more experienced applicant than was Hollaway. Laird indicated that the ranking was done by consensus of the panel rather than strict summation of the panelists' raw scores for each applicant.

The panel decided to interview the top six candidates and to weigh their interview per-

formance equally with the panel's pre-interview evaluation of the qualifications of each applicant. Each candidate was asked a series of identical questions in the interview; each interview lasted fifteen to thirty minutes.

Following the interviews, the panel ranked the candidates' interview performances. Heinly was ranked second behind Janelle Stokes; Hollaway was ranked last. According to panel members' testimony, Hollaway was curt and blunt during her interview; it appeared to the panel that she did not make any effort to answer the questions. Hollaway admitted at trial that she was put out by the interview because she thought the questions were not germane to the position and that she probably had given short answers.

The panel combined its pre-interview evaluations with its impressions from the interviews and determined that Heinly and Van Hook were tied for the top ranking; Stokes ranked third and Hollaway fourth. The panel selected Heinly.

II.

The selection process for this specific position took place against a background of concern in the Corps about the retention and future performance of its aging workforce. In documents released in September 2002 and January 2003, the Corps described a Strategic Management Plan ("SMP") that noted, *inter alia*, that "[w]e are faced with an aging workforce and a small new generation of workers. In 1989, approximately 54 percent of the workforce was more than 40 years of age; in May 2001, 73 percent were in that category." The plan noted that "measures, such as education level, length of service, *age*, awards, and diversity will also be used to measure success at maintaining a high quality workforce" (emphasis added).

In January 2002, the Southwestern Division of the Corps, in which the selection process for the Plan Formulation Specialist position took place, promulgated its "Emerging Leaders Program" ("ELP"), the object of which was "to provide individuals who have exhibited leadership potential at the GS-09 through GS-12 . . . levels, the opportunity to further develop and refine their leadership skills." The program was open to employees of all ages. Heinly was a member of the program, but Hollaway was not.

III.

Hollaway challenges the finding that age was not a factor in the Corps's selection process. We review findings of fact for clear error. *Couch v. Cro-Marine Transp., Inc.*, 44 F.3d 319, 327 (5th Cir. 1995). Hollaway also challenges some of the legal analysis in the district court's *dicta*. We review conclusions of law *de novo*. *Randel v. United States Dep't of Navy*, 157 F.3d 392, 395 (5th Cir. 1998). The district court's factual findings are sufficient to support its disposition, so we do not reach its legal analysis of the alternate, hypothetical situation presented in its *dicta*.

We will overturn a factual finding for clear error only if we are left "with the definite and firm conviction that a mistake has been made." *Couch* 44 F.3d at 327. We are left with no such conviction here. The factual findings are amply supported in the record.

IV.

A plaintiff may prove an ADEA claim through direct or circumstantial evidence or a combination of the two. *Sandstad v. CB Richard Ellis, Inc.*, 309 F.3d 893, 896 (5th Cir. 2005). Where a plaintiff produces direct evidence that "discriminatory animus played a role in the decision at issue," the defendant must either refute the evidence or prove that it

would have taken the same action in the absence of discriminatory animus. *Id.*

A plaintiff without direct evidence of age discrimination must make out a *prima facie* case of such discrimination through indirect evidence by showing: (1) that he was a member of the protected class; (2) that he had "applied and [been] qualified for a job for which the employer was seeking applicants;"(3) that he was rejected; and (4) that the employer hired someone younger. *See Bodenheimer v. PPG Indus., Inc.*, 5 F.3d 955, 957 (5th Cir. 1993); *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973). Once the plaintiff has made such a case, the employer must respond by offering a non-discriminatory reason for its adverse employment action. *McDonnell Douglas*, 411 U.S. at 802.

If the employer offers such a reason, the plaintiff must demonstrate that the explanation is a pretext and that age actually motivated the decision. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 352 (5th Cir. 2005). A plaintiff need not produce new evidence of discriminatory intent. A finder of fact may, but is not required to, infer discrimination from the combination of the plaintiff's *prima facie* case and his evidence that the employer's proffered reason was a pretext. *See id.* at 350; *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 148 (2000).

Holloway argues essentially that she was objectively such a stronger candidate than was Heinly that age discrimination must have infected the panel's selection process. She contends that the substantial weight given to the interview was a pretext and that the panel gradually skewed the process in such a way that it would inevitably favor the younger candidate, whom the panel actually desired to hire because of his youth rather than for any

superior qualities he demonstrated during the hiring process.

Holloway emphasizes that the initial ranking of job candidates did not correlate exactly with the summed scores of the four panel members who submitted their scores; according to those scores, she was twenty points ahead of Heinly but was ranked in a tie with him for second. She points out that the panel determined to interview candidates only after the initial evaluation, where Heinly ranked second, tied with Holloway and behind the older and more experienced Van Hook. She claims the interview was then unduly prominent in the panel's decision.

Holloway points to Shaw's testimony that the position had been posted as a "tech" because the Corps estimated that 75% of the skills were technical but only 25% were verbal and interpersonal. She reasons that the panel weighed verbal and interpersonal skills as 60% of the overall selection processSS20% under factor 5 in the initial evaluation process (which accounted for 50% of the eventual total), then the entire 50% weight that was accorded to the interview.

Holloway notes with suspicion that the original interview scores have been lost and points to the Corps's hiring guidelines indicating that, should a selection panel opt to conduct interviews, a candidate's failure to be available for an interview may not be counted against him. Finally, Holloway intimates that the promulgation of the ELP and SMP cast all of this behavior in a particularly suspicious light; according to her, the Corps developed a policy of discriminating against older workers, and that policy was followed in the selection process for the position for which she applied.

4

V.

Hollaway cites the promulgation of the SMP and ELP as direct evidence of discrimination. The district court found this evidence of discrimination unpersuasive. It credited Laird's testimony that the panel was unaware of the SMP when it made its hiring decision and that the SMP played no role in the panel's selection process. It also found that the ELP was open to employees of any age and was not used in practice as a tool to discriminate against older employees. These findings are not clearly erroneous.

The district court's credibility determinations with regard to testifying witnesses are entitled to particular deference by this court, and there is no reason to overturn them. *See* FED. R. CIV. P. 52(a). It is not beyond belief that panel members making a hiring decision in April 2002 were not aware of a management plan originating in central headquarters and documented in the record by materials from September 2002 and January 2003. Holloway's mere implication that the panel members were lying about the role of the SMP is insufficient to warrant reversal. Hollaway's brief, though full of imputations about the illegality of the plan, supplies no reason to believe that the findings concerning the plan's irrelevance to the hiring decision are clearly erroneous.

Similarly, rather than pointing to any specific parts of the record indicating that the findings regarding the ELP are clearly erroneous, Hollaway just reargues her case from the trial. We see no justification, however, for overturning the finding that the ELP was not used to discriminate against older workers in general or Hollaway in particular.

The district court found that the ELP was open to anyone of any age working in the Corps and that workers over the age of forty who had not participated in the ELP had been promoted to the GS-13 level. These findings are amply supported in the record and reasonably serve to justify the district court's conclusion that the Corps did not use the ELP to discriminate against Hollaway. We therefore affirm the determination that Hollaway's direct evidence of discrimination was insufficient to establish that discriminatory animus played a role in the Corps's employment decision.

VI.

The district court found that Hollaway had met the *McDonnell Douglas* requirement for establishing a *prima facie* case of employment discrimination using circumstantial evidence, and the Corps does not challenge that conclusion. Instead, the Corps argues here, as it did in the district court, that her poor performance in the interview was the reason for its decision not to hire her. As noted above, Hollaway contends this is pretext; she believes that the weight given to the interview was merely an excuse to hire a younger and more personable candidate for a technical position in which interpersonal skills were relatively insignificant.

The panel members' testimony supplies an adequate ground to affirm the conclusion that Hollaway performed poorly in the interview. The most obvious flaw in her argument regarding the relative weight given to the interview is that it ignores the fact that an interview is not merely a means by which to test verbal and interpersonal skills. Interviews may measure candidates' enthusiasm for applying their skills to a particular job, their ability to get along with the specific group of people with whom they will be working, and their judgment in the midst of at least one stressful situation (the interview itself).

The district court did not clearly err when it determined that the Corps's choice to con-

5

duct a job interview as part of the hiring process, and to weigh that interview equally with the cumulation of all other factors deemed relevant to the position, was a reasonable and typical exercise of the panel's discretion rather than a pretextual feint to mask invidious discrimination. Hollaway's contention that the Corps's policy against counting a candidate's failure to be available for an interview against that candidate precludes the Corps from penalizing a candidate for a bad interview is illogical. The fact that the Corps does not force any candidate to interview does not preclude it from taking into account that a candidate who did interview performed poorly. The law does not prevent an employer from reacting to negative information about a candidate where it would not have reacted had it possessed no information at all.

The fact that the panel members' initial notes from the candidates' interviews were lost does not alter our conclusion. Lost notes, though unfortunate, do not themselves make a case for invidious discrimination. Likewise, the district court did not clearly err by discounting the fact that the four submitted raw scores did not precisely match the final rankings in the pre-interview evaluation. The court could have credited Laird's testimony that the scores were only a rough guideline used to create rankings, and it could have accounted for lack of Saunders's input in the raw scores. Because Hollaway cites no other persuasive reason why the district court was clearly in error, we affirm the conclusion that the selection of Heinly instead of Hollaway was motivated by her relatively poor interview performance rather than by discriminatory animus.

## VII.

As noted above, the district court went on to discuss how it would have disposed of the case had the Corps raised a business necessity defense to a claim of disparate impact from the SMP and ELP. Because we affirm the findings that the SMP played no role in the selection process and that the ELP was not used to discriminate against older employees, we need not and do not address the court's alternate analysis.

AFFIRMED.

6