# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

---

No. 14-10609

United States Court of Appeals
Fifth Circuit

**FILED**

February 5, 2015

Lyle W. Cayce
Clerk

TARA T. MOYER,

Plaintiff-Appellant,

v.

JOS. A. BANK CLOTHIERS, INC.,

Defendant-Appellee.

---

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:11-CV-3076

---

Before DENNIS, PRADO, and HIGGINSON, Circuit Judges.

PER CURIAM:[*]

Plaintiff-Appellant Tara Moyer filed suit against her former employer Defendant-Appellee Jos. A. Bank Clothiers, Inc. ("Jos. A. Bank") asserting claims for gender discrimination, hostile work environment based on sexual harassment, hostile work environment based on demotion and transfer, retaliation based on demotion and transfer, and postemployment retaliation in violation of Title VII of the Civil Rights Act of 1964, as amended ("Title VII"), 42 U.S.C. § 2000e, *et seq.* In addition, Moyer alleged state law claims for defamation, defamation by self-publication, intentional infliction of emotional

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10609

distress, intrusion upon seclusion, negligent hiring, negligent retention, negligent entrustment, and negligent supervision and training.   In an earlier opinion and order, the district court granted summary judgment for Jos. A. Bank on all claims except Moyer's hostile work environment claim based on demotion and transfer and her postemployment retaliation claim, noting that Jos. A. Bank had not moved for summary judgment on those two claims. Subsequently, Jos. A. Bank filed a supplemental motion for summary judgment addressing those two remaining claims, which the district court granted.   Moyer timely appealed.   We AFFIRM.

## I.

A complete recitation of the pertinent facts and procedural history is contained in the district court's thorough opinions granting summary judgment for Jos. A. Bank, which we incorporate by reference.   *See Moyer v. Jos. A. Bank Clothiers, Inc.*, 3:11-CV-3076, 2014 WL 1661211 (N.D. Tex. Apr. 25, 2014); *Moyer v. Jos. A. Bank Clothiers, Inc.*, 3:11-CV-3076, 2013 WL 4434901 (N.D. Tex. Aug. 19, 2013).   We sketch here only a distillation thereof essential to an understanding of our disposition.

In December 2008, Moyer began her employment with Jos. A. Bank as the assistant manager of an Austin store.   Following her request to transfer to a Dallas-area location, Moyer began working as an assistant manager at the Frisco store in the spring of 2009.   Moyer alleges that while working at the Frisco store, she was harassed by Doug Cully, her store manager and supervisor; Ryan Hair, who worked as a "third key," which is a quasi-supervisor role; and Doug Cummings, a sales associate.   She further alleges that Cully and Terry Hillgartner, the regional sales director, failed to remedy the harassment.

No. 14-10609

Moyer testified that Cully's harassment of her stemmed from his temper, which Cully directed not only at her but also at male employees. For example, Moyer explained that Cully would "yell" at her and other employees "two to three times a week." On one occasion, Cully "chew[ed] [Moyer] out for being late and not calling." On another occasion, Cully told Moyer, "It's my store. I'm going to run it my way." In addition, Moyer testified that Cummings and Hair, who were both her subordinates, repeatedly used the word "bitch" and "cunt" when referring to female customers. Moyer also described an occasion when Cummings made a "masturbatory gesture" when describing a company officer's visit to the store.

In May 2010, Moyer was transferred to the Addison store where she began working as a third key. Moyer explained the circumstances surrounding her transfer as follows: In January 2010, she began planning an anniversary trip with her husband for July 2010 but later discovered that Cully was planning a vacation for the same period. Because both the manager and assistant manager could not simultaneously take vacation, Cully told Moyer the only way she could keep her vacation plans would be to transfer to another store. According to Moyer, Cully explained that "there was a position for third key at the Addison store," which Moyer ultimately accepted. Although she was disappointed that the transfer necessarily would involve a demotion from assistant manager to third key, Moyer explained that she never told anyone at Jos. A. Bank she was disappointed with the new position, in part because she believed she would have a female supervisor at the Addison store. Nevertheless, Moyer testified that she believed this transfer was retaliation against her by Hillgartner based on her complaints to him that Cully had an "anger problem."

3

No. 14-10609

At the Addison store, Moyer alleges that she suffered harassment from two employees: Gary McDonald, who was the assistant manager, and Dane Wagner, who was a sales associate.   Specifically, Moyer explained that, when a new delivery arrived at an adjacent furniture store, McDonald "would blab all over the store, 'Sounds like they're having sex next door, must be having sex next door.'"   In addition, Moyer testified that McDonald "would talk about how pretty" certain female customers were and would talk about "taking pictures of tits and asses and legs."   However, Moyer testified she never saw any such photos taken by McDonald.   As examples of the harassment she experienced from Wagner, Moyer explained that Wagner once made a comment to her about "edible lube," talked to her about his boyfriends, called Moyer's husband an "SOB," and sent her e-mails that she considered offensive, including "sexual" e-mails that contained photos of bodybuilders and e-mails about local news and politics.[1]   Moyer also complained that staff used the term "wife-beater" to refer to men's undershirts.

It is undisputed that, while working at the Addison store, Moyer made at least two inappropriate comments about persons of color and Jewish individuals.   During one conversation in May 2010, Moyer advised Wagner, who was trying to sell his parents' Cadillac, to "take [the car] to colored town." On October 16, 2010, Moyer received a write-up from Jos. A. Bank for making this "racially insensitive comment," which also advised that she would be terminated if this conduct were repeated.   On October 20, 2010, Moyer received another write-up from Jos. A. Bank for using "improper language

---

[1] Moyer explained that Wagner stopped e-mailing her after she requested that he do so.   In addition, Moyer testified that she sent Wagner, along with other individuals, an e-mail containing a photograph entitled "Granny," which depicted a naked elderly woman with tattoos.

4

offensive to others" in the store.    Moyer explained this write-up stemmed from statements that she made to a customer who was trying to bargain with her, specifically: "Man, quit trying to Jew me down.    This ain't no Mercado Juarez."    The customer was Jewish.

On December 22, 2010, John Joekel, a sales associate, filed a written report with Jos. A. Bank alleging that approximately one week prior, Moyer walked by him while he was re-folding a shirt and told him, "You need to get the nigger to do that."    Moyer denies using this derogatory word in making this statement to Joekel,[2] but she also testified that she may have used the word "nigger" on other occasions at Jos. A. Bank in the context of quoting her husband, whom she described as "a racist."    Following Joekel's complaint, Hillgartner came to the Addison store and suspended Moyer with pay.    On December 30, 2010, Moyer was terminated for violating Jos. A. Bank's Professional Conduct Policy and Prohibition Against Harassment.    At the time of her hire, Moyer acknowledged receipt of this policy which provides, *inter alia*, that "derogatory racial, ethnic, religious, age, sexual orientation, sexual or other inappropriate remarks, slurs, or jokes will not be tolerated." The termination letter cited not only Moyer's alleged racially derogatory remark to Joekel but also the "racially insensitive comment" for which she received a warning in October 2010.

On November 8, 2011, Moyer filed suit in the United States District Court for the Northern District of Texas asserting the above-referenced federal and state law claims.    Discovery ensued.    The district court ultimately

---

[2] Although she denies using the word "nigger" in making the statement to Joekel, which we must credit at this stage of proceedings, Moyer also acknowledged that, if she had made the statement as alleged, then it would have been appropriate for Jos. A. Bank to terminate her pursuant to its policies.

No. 14-10609

granted summary judgment in favor of Jos. A. Bank on all Moyer's claims. Moyer timely appealed.

## II.

We review a grant of summary judgment *de novo*, applying the same standard as the district court. *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 308 (5th Cir. 2004). Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 349 (5th Cir. 2005). "In making this determination, 'we view the evidence and all factual inferences from that evidence in the light most favorable to the party opposing the motion and all reasonable doubts about the facts are resolved in favor of the nonmoving litigant.'" *Id.* (quoting *Bryan v. McKinsey & Co., Inc.*, 375 F.3d 358, 360 (5th Cir. 2004)).

Based on a careful review of the record, the parties' respective briefs, and the relevant district court opinions, we agree that summary judgment should be granted for Jos. A. Bank on all Moyer's claims. Because the district court's careful analysis thoroughly explains our reasoning, we need not engage in a redundant analysis simply to reach the same result. We therefore AFFIRM for essentially the same reasons as the district court.