# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-10258
Summary Calendar

United States Court of Appeals
Fifth Circuit

**FILED**
January 6, 2015

Lyle W. Cayce
Clerk

HARVEY HOFFMAN,

> Plaintiff - Appellant

v.

BAYLOR HEALTH CARE SYSTEM, doing business as Baylor Medical
Center at Waxahachie,

> Defendant - Appellee

Appeal from the United States District Court
for the Northern District of Texas
USDC No. 3:12-cv-3781

Before JONES, BENAVIDES, and GRAVES, Circuit Judges.

PER CURIAM:*

Appellant Harvey Hoffman ("Hoffman") appeals the district court's order granting summary judgment on his disability- and age-discrimination claims in favor of Appellee Baylor Health Care System, d/b/a Baylor Medical Center at Waxahachie ("Baylor"). For the reasons below, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-10258

## I.     BACKGROUND

Baylor employed Hoffman as a Magnetic Resonance Imaging ("MRI") Technician from September of 2001 until his termination in November of 2011. At the time of his termination and of the events described below, Hoffman was 70 years of age, with a slight tremor in his right hand. The facts are largely undisputed, and differ only as to the protocols governing Baylor's MRI procedures.

According to Baylor's written job description of the position, an MRI Technician's duties included: "Review[ing] patient's chart or orders to verify the examination to be performed. Evaluat[ing] patient's history and symptoms for the procedures [sic] clinical criteria." As part of its Magnetic Resonance Department Safety Policies and Procedures, Baylor instituted a "Department Specific Policy" for MRI screening of patients, designed to detect the presence of "contraindicators" in patients which preclude performance of the MRI procedure. In order to "determine any questionable issue related to the [two-page Baylor] MR patient screening form" ("MRI Screening Form"), the policy requires the MRI Technician to "discuss with the patient or family member the possibility of any foreign electronic, mechanical or metallic objects within the patient." Additionally, the policy provides that, if a patient is

> "incoherent or unable to communicate with the technologist, a responsible person (i.e., family member or care giver) familiar with the patient's medical history will need to provide the necessary clinical information to the satisfaction of the technologist as to prevent an unsafe interaction of foreign objects with the magnetic field and/or RF signal."

The policy prohibits MRI procedures when a patient has not been cleared of unsafe objects.

For his part, Hoffman instead asserts that MRI procedures were alternatively governed by "established practice" involving a series of multi-

2

party protocols, stating in his declaration that he "noted a standardized and routine procedure" for performing an MRI procedure by which the MRI Technician and nursing staff would obtain, share, and review relevant information through discussion and documentation. Hoffman provides no other evidence of this procedure besides his declaration and, although we have previously held that "self-serving allegations" in an affidavit, unsupported by documentation or testimony of a third party, "are not the type of significant probative evidence required to defeat summary judgment,"[1] we need not reach that consideration here. This is because, even assuming the truth of Hoffman's assertions regarding procedures, they do not create a fact issue since Baylor was not obligated, for disciplinary purposes, to adopt Hoffman's subjective, *post-hoc* understanding of the process, especially as it conflicted with Baylor's own safety protocols and job description, and Baylor's failure to do so, standing alone, is not probative of discriminatory intent.

On October 28, 2011, an MRI procedure precipitated the adverse employment action upon which Hoffman bases his claims. On that date, an emergency-room patient ("Patient X") was admitted without the ability to communicate with hospital staff, and a physician ordered Patient X to undergo an MRI. Staff nurse Danny Stokes ("Stokes") filled out the first page of the MRI Screening Form and, based on information in the patient's chart, noted that she had a pacemaker. Due to a shift change, Stokes passed along the incomplete form, as well as the information about Patient X's pacemaker, to day nurse Paula Zavala ("Zavala"), who completed the form's second page, again noting the presence of the pacemaker. Additionally, Zavala noted the presence of a pacemaker on the communication board in Patient X's room. Later, Hoffman called the unit clerk Debra Watkins ("Watkins"), who informed

---

[1] *United States v. Lawrence*, 276 F.3d 193, 197 (5th Cir. 2001) (quotations omitted).

No. 14-10258

him that Patient X had been cleared for an MRI. At that point, Hoffman and a radiology file room clerk proceeded to Patient X's room and there spoke with Zavala, who did not verbally note Patient X's pacemaker.

Hoffman and the radiology clerk then transported Patient X, along with her chart, to the MRI examination suite. Fifteen to thirty minutes later, Zavala telephoned Patient X's daughter regarding medication, and explained that Patient X would be undergoing an MRI. The daughter advised that Patient X should not undergo an MRI procedure due to her pacemaker, and Zavala immediately called Hoffman to relay the information. At that point, however, the MRI procedure had already been performed, fortunately without any adverse consequences to Patient X.

Ultimately, however, the procedure had adverse consequences for Hoffman's employment. Following the incident's reporting to Ronny Rose ("Rose"), Hoffman's supervisor in the Magnetic Resonance Department, Human Resources Manager Marcos Ramirez ("Ramirez") performed an investigation that resulted in two pertinent findings. First, Ramirez found that Hoffman, as the MRI Technician, was responsible for checking the MRI Screening Form for the presence of contraindicators. Second, Hoffman's personnel file included two prior incidents and attendant warnings to Hoffman for failure to follow MRI protocols. The first incident, which occurred on April 21, 2008, involved Hoffman performing an MRI procedure on a patient with a history of renal problems, in response to which Hoffman was warned to "[r]eview contrast form for contraindications." In the second incident, which occurred on April 6, 2011, Hoffman performed an MRI procedure on a person with a hearing aid, another contraindication; this event was followed by a general admonishment by Rose that no MRI procedures should be performed where the screening form reflects the presence of contraindicators, specifically

4

No. 14-10258

hearing devices. On November 3, 2011, Rose and Ramirez terminated Hoffman's employment with Baylor.

In November of 2012, Hoffman initiated this action, asserting that his termination was the result of discrimination in violation of the Age Discrimination in Employment Act ("ADEA")[2] and the Americans with Disabilities Act ("ADA").[3] The district court granted Baylor's motion for summary judgment on both claims, and Hoffman appealed.

## II.     STANDARD OF REVIEW

We review a grant of summary judgment *de novo* and apply the same standards as the district court.[4] "A grant of summary judgment is proper when there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law."[5] In cases such as this, where employment discrimination claims are based on circumstantial evidence, we apply the burden-shifting framework established in *McDonnell Douglas Corp. v. Green.*[6] Under *McDonnell Douglas*, the analysis proceeds through three, burden-shifting steps, whereby the plaintiff must first make a prima facie showing of his claims, upon satisfaction of which "the employer must articulate a legitimate, non-discriminatory reason for the adverse employment action."[7] Then, if the employer satisfies its burden, the employee can yet prevail by presenting evidence that the employer's proffered reason is merely a pretext for discrimination.[8] Finally, if the employee satisfies the third-step showing, the employer may only prevail by proving it would have taken the adverse

---

[2] 29 U.S.C. § 623(a)(1) (prohibiting employment discrimination due to age).

[3] 42 U.S.C. § 12112 (prohibiting employment discrimination due to disability).

[4] *See Baker v. Am. Airlines, Inc.*, 430 F.3d 750, 753 (5th Cir. 2005) (citing *Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005)).

[5] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 257 (5th Cir. 2009).

[6] 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973).

[7] *Richardson v. Monitronics. Int'l, Inc.*, 434 F.3d 327, 333 (5th Cir. 2005).

[8] *Id.*

employment action regardless of the discriminatory motivation; this showing "is effectively that of proving an affirmative defense."[9]

## III.   ANALYSIS

As before the district court, it is undisputed on appeal that Hoffman satisfied the first three prima facie elements of each of his claims. To support his prima facie burden on his ADEA claim, Hoffman must show: (1) "[he] was discharged"; (2) "qualified for the position"; (3) "within the protected age group at the time of the discharge"; and (4) "either replaced by someone younger, replaced by someone outside the protected class, or otherwise discharged because of [his] age."[10] Regarding his ADA claim, Hoffman must make the prima facie showing that he "(1) suffers from a disability; (2) was qualified for the job; (3) was subject to an adverse employment action, and (4) was replaced by a non-disabled person or treated less favorably than non-disabled employees."[11]

Notwithstanding the different degree of proof required for showing causation under the ADEA and ADA,[12] claims under both statutes allow a showing of causation by disparate treatment, that is, by comparison with employees outside the protected class.[13] In order for the disparate treatment to be probative of discriminatory animus, however, the plaintiff must present

---

[9] *Id.* (quoting Machinchick v. PB Power, Inc., 398 F.3d 345, 355 (5th Cir. 2005)).

[10] *Phillips v. Leggett & Platt, Inc.*, 658 F.3d 452, 455 (5th Cir. 2011) (citing *Rachid v. Jack In The Box, Inc.*, 376 F.3d 305, 309 (5th Cir. 2004)).

[11] *Seaman v. CSPH, Inc.*, 179 F.3d 297, 300 (5th Cir. 1999).

[12] The ADEA does not authorize a mixed-motives claim of age discrimination, *Gross v. FBL Fin. Servs., Inc.*, 557 U.S. 167, 175 (2009), such that a plaintiff-employee must show that age was the but-for cause of the alleged age discrimination. *Reed v. Neopost USA, Inc.*, 701 F.3d 434, 440 (5th Cir. 2012). In contrast, "[t]he proper causation standard under the ADA is a 'motivating factor' test . . . . [i.e.,] 'discrimination need not be the sole reason for the adverse employment decision.'" *Pinkerton v. Spellings*, 529 F.3d 513, 519 (5th Cir. 2008) (quoting *Soledad v. U. S. Dep't of Treasury*, 304 F.3d 500, 503 (5th Cir. 2002)).

[13] *See, e.g.,* Raytheon Co. v. Hernandez, 540 U.S. 44, 53 (2003) (ADA); *Berquist v. Wash. Mut. Bank*, 500 F.3d 344, 353 (5th Cir. 2007) (ADEA).

comparator employees of sufficient similitude.[14] As he does on appeal, Hoffman relied solely on such comparator evidence of disparate treatment to satisfy both his prima facie and pretext showings at the summary-judgment stage. Specifically, though Hoffman concedes on appeal that he "clearly had culpability in the breakdown of the MRI process—perhaps even the most culpability," Hoffman asserts he was treated differently than Zavala and Watkins, both of whom Hoffman asserts were also culpable for the MRI incident. At the time of Hoffman's termination, Watkins was 54 or 55 years old and Zavala was 49 years old, and neither individual had a history of disabilities. Additionally, neither individual was disciplined as a result of the Patient-X incident. Nevertheless, the district court found that Hoffman had presented comparators that were too dissimilar and, as a result, had failed to make his prima facie and pretext showings as to both claims.

Centering on the evaluation of his evidence of disparate treatment, Hoffman's challenge on appeal is two-fold. First, Hoffman asserts that the standard by which we evaluate comparators is inconsistent with the Supreme Court's direction, and that summary judgment was not supported under a more lenient standard. Second, Hoffman argues that the district court did not appropriately consider evidence about those comparators which he argues supported his disparate-treatment argument. For the reasons below, neither argument is meritorious.

## A. Comparator Standard

When a plaintiff proffers similarly situated employees in support of an employment discrimination claim, we require that the relevant employment

---

[14] *See Wyvill v. United Cos. Life Ins. Co.*, 212 F.3d 296, 302 (5th Cir. 2000) (citations omitted).

No. 14-10258

actions take place "under nearly identical circumstances."[15] At the same time, we have emphasized that "nearly identical is not synonymous with identical."[16]

> Applied to the broader circumstances of a plaintiff's employment and that of his proffered comparator, a requirement of complete or total identity rather than near identity would be essentially insurmountable, as it would only be in the rarest of circumstances that the situations of two employees would be totally identical.[17]

In practical effect, this standard renders employees not similarly situated when, compared to the plaintiff, the employees have different work responsibilities or different supervisors, or work in different company divisions, or were subject to adverse employment actions too removed in time or for violations too dissimilar in type.[18] Further, "[i]f the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated for the purposes of an employment discrimination analysis."[19] Specifically regarding the disciplinary histories of employees, we have expressly incorporated the guidance of the Supreme Court in *McDonald v. Santa Fe Trail Transportation Co.*: "*As the Supreme Court has instructed*, the similitude of employee violations may turn on the 'comparable seriousness' of the offenses for which discipline was meted out and not

---

[15] *Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co., Ltd.*, 924 F.2d 93, 97 (5th Cir.1991)).

[16] *Turner v. Kan. City S. Ry. Co.*, 675 F.3d 887, 893 (5th Cir. 2012) (internal quotation marks omitted).

[17] *Lee*, 574 F.3d at 260.

[18] *See id.*

[19] *Id.* at 260 (quoting *Wallace v. Methodist Hosp. Sys*, 271 F.3d 212, 221 (5th Cir. 2001) (emphasis added)).

necessarily on how a company codes an infraction under its rules and regulations."[20]

## B. Discussion

Hoffman asserts that this approach does not comport with that of the Supreme Court or those of other circuit courts. Hoffman first asserts that our standard is inconsistent with the Supreme Court's evaluation, within the *McDonnell Douglas* rubric, of whether employees are similarly situated. Specifically, Hoffman challenges this Court's incorporation of the phrase "nearly identical" as not originating in Supreme Court jurisprudence. On that basis, Hoffman further argues that we should adopt a more lenient standard applied by a district court in *Coveney v. U.S. Bank National Ass'n*, by which comparators must have "(1) shared the same supervisor, (2) [been] subject to the same standards, and (3) engaged in the same conduct without such differentiating or mitigating circumstances that would distinguish their conduct or the employer's treatment of them for it."[21]

As an initial matter, "[i]t is well-established that one panel of our court will not overturn another absent an intervening precedent by our court sitting *en banc* or a Supreme Court precedent."[22] Beyond that principle, Hoffman's legal argument is unpersuasive, elevating superficial, verbal distinctions to the neglect of substantive, practical commonalities, a point that is illustrated by the factual contours of this case.

Zavala and Watkins are excessively dissimilar under our precedent, which applies the standard enumerated by the Supreme Court, and even under the less-demanding *Coveney* standard upon which Hoffman relies. The record

---

[20] *Id.* at 261 (emphasis added) (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)) (emphasis added).

[21] No. 1:07-CV-706, 2008 WL 4332515, at *8 (S.D. Ohio Sept. 17, 2008).

[22] FDIC v. Dawson, 4 F.3d 1303, 1307 (5th Cir. 1993).

reveals that Zavala and Watkins did not share the same supervisor as Hoffman, a differentiation which is perhaps due to their working in entirely different departments of the hospital. Under our precedent, Hoffman's proffered comparators are insufficient for this reason alone.[23] Moreover, since Hoffman is the only person of the three who was part of the Magnetic Resonance Department, he alone was subject to the "Department Specific Policy" with which he did not comply. It is further undisputed that neither Zavala nor Watkins occupied positions as MRI Technicians, and thus were not subject to the requirements of Hoffman's job description.

Beyond the policy and job requirements, Hoffman has provided no evidence that Zavala and Watkins were "subject to the same standards" as Hoffman, a requirement of the more lenient standard.[24] Finally, as the only person from whom compliance was required, only Hoffman had a history of reprimands for his noncompliance; in contrast to Hoffman's two previous reprimands, Zavala and Watkins had no such history. In light of this disciplinary-history distinction, Zavala and Watkins are not valid comparators under the precedent of this Court and the Supreme Court, because any shortcoming by Zavala and Watkins was not of "comparable seriousness" to Hoffman's third failure to abide the safety protocols.[25] This distinction further vitiates the disparate-treatment comparison under the standard promoted by Hoffman, since the lack of previous failures is certainly a "differentiating or mitigating circumstance[] that would distinguish [Zavala's and Watkin's] conduct or [Baylor]'s treatment of them for it."[26]

---

[23] *See Lee*, 574 F.3d at 259.

[24] *Coveney*, 2008 WL 4332515, at *8.

[25] *Lee*, 574 F.3d at 261 (quoting *McDonald v. Santa Fe Trail Transp. Co.*, 427 U.S. 273, 283 n.11 (1976)).

[26] *Coveney*, 2008 WL 4332515, at *8 (quoting *Ecergovich v. Goodyear Tire & Rubber Co.*, 154 F.3d 344, 352 (6th Cir. 1998).

## C. Conclusion

In sum, because we conclude that Hoffman's proffered comparators are insufficiently similar to constitute probative evidence of discriminatory animus, the district court did not err in its consideration thereof.

AFFIRMED.