# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-20616

United States Court of Appeals
Fifth Circuit

**FILED**

May 6, 2015

Lyle W. Cayce
Clerk

JAMES HINGA,

      Plaintiff - Appellant

v.

MIC GROUP, L.L.C.,

      Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-414

Before JOLLY, HIGGINSON, and COSTA, Circuit Judges.

STEPHEN A. HIGGINSON, Circuit Judge:*

James Hinga appeals the district court's grant of summary judgment in favor of his former employer, MIC Group, LLC ("MIC") on his Age Discrimination in Employment Act ("ADEA") claim brought after his employment was terminated. Because Hinga has not established a prima facie case of discrimination by identifying similarly situated, younger employees who were not discharged, we AFFIRM.

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 14-20616

## I. FACTS AND PROCEEDINGS

### A. Factual Background

Hinga began working as a machinist for MIC's predecessor in 2003. MIC assembles and sells actuators—industrial units used to control the flow of liquids and gasses. The specific product forming the basis for this lawsuit is the NEMA 7 actuator. A NEMA 7 actuator complies with National Electrical Manufacturers Association ("NEMA") standards, making it appropriate for use in hazardous conditions. One NEMA standard requires the portion of the top casing that meets the bottom to be "lapped," or flattened, to within .001 inches of level, and the corresponding portion of the bottom casing must be lapped to within .002 inches of level. This standard limits the size of a seam through which a spark may escape and ignite volatile gas in the surrounding environment.

In October 2010, a distributor of MIC's NEMA 7 actuators informed MIC that a batch of actuators had failed an inspection of the lapping tolerances. After an investigation, MIC recalled 662 actuators, including all those produced between June 1, 2010 and October 7, 2010. MIC employees inspected hundreds of actuators that were returned to MIC and found lapping violations in all of them. MIC estimated the cost of the recall to be at least $194,000.

MIC's subsequent investigation identified two individuals responsible for the recall: Hinga, for lapping the defective parts and not discovering that they failed the lapping tolerances, and Joel Watts, an employee in the Final Assembly department, for failing to properly inspect the parts. Hinga and Watts were given the option of resigning instead of being terminated, an option both accepted. Hinga was 76 years-old at the time of the events at issue.

MIC's investigation resulted in an Improvement Action Report. The Report determined that the root cause of the recall was that the lapping machine was not properly maintained and had no preventative maintenance

2

schedule or surface quality inspection schedule.  The investigation found that a contributing factor was Hinga's failure to inspect parts for flatness despite representing that he had performed the inspections.  Watts's failure to inspect and his representation that he had inspected also contributed to the recall.  As a result of the recall and investigation, MIC implemented a formal inspection procedure—which made clear that machinists were responsible for inspecting a sample of each lot—and outsourced its lapping department.

## B. Proceedings

On February 15, 2013, Hinga filed a complaint in the United States District Court for the Southern District of Texas claiming age discrimination under the ADEA and race and national origin discrimination under Title VII. On June 13, 2013, the district court granted MIC's motion to dismiss Hinga's race and national origin discrimination claim—because Hinga had not exhausted administrative remedies—and dismissed his claim for exemplary damages under the ADEA.[1]  On August 29, 2014, the district court granted MIC's motion for summary judgment on the ADEA claim.  The district court found that Hinga had not set forth a prima facie case of age discrimination because he had not produced evidence that younger employees who were not discharged were similarly situated.  The district court also found, alternatively, that Hinga did not demonstrate a genuine dispute that MIC's proffered reason for his termination was pretextual.  Hinga timely appealed.

## II. DISCUSSION

### A. Standard of Review

We review a district court's grant of summary judgment de novo, applying the same standards as the district court. *Rogers v. Bromac Title Servs., L.L.C.*, 755 F.3d 347, 350 (5th Cir. 2014).  Summary judgment is

---

[1] Hinga has not appealed the dismissal.

appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "A genuine dispute as to a material fact exists 'if the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" *Rogers*, 755 F.3d at 350 (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).  In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party.  *Scott v. Harris*, 550 U.S. 372, 378 (2007).  "But [s]ummary judgment may not be thwarted by conclusional allegations, unsupported assertions, or presentation of only a scintilla of evidence."  *Rogers*, 755 F.3d at 350 (internal quotation marks omitted).

Hinga urges us to adopt a gloss on the summary judgment standard and hold that "summary judgment should seldom be used in employment-discrimination cases."  *Crawford v. Runyon*, 37 F.3d 1338, 1341 (8th Cir. 1994), *abrogated by Torgerson v. City of Rochester*, 643 F.3d 1031 (8th Cir. 2011).  Hinga's argument is meritless.  As the Eighth Circuit recognized in overruling its prior precedent, cases establishing a "different standard of review for summary judgment in employment discrimination cases are contrary to Supreme Court precedent."  *Torgerson*, 643 F.3d at 1043; *see also Moss v. BMC Software, Inc.*, 610 F.3d 917, 922 (5th Cir. 2010) (applying the traditional summary judgment analysis to an ADEA claim).

**B. ADEA Framework**

The ADEA makes it unlawful "to discharge any individual . . . because of such individual's age."  29 U.S.C. § 623(a)(1).  "Under the ADEA, the plaintiff has the burden of persuasion to show that age was the but-for cause of [his] employer's adverse action."  *Jackson v. Cal-Western Packaging Corp.*, 602 F.3d 374, 377 (5th Cir. 2010) (internal quotation marks and citation omitted).  A plaintiff may use circumstantial evidence to show discrimination.  *See id.*  This

court applies the familiar burden shifting framework to claims of age discrimination based on circumstantial evidence. *See id.* (citing *McDonnell Douglas v. Green*, 411 U.S. 792 (1973)). Hinga must first establish a prima facie case of age discrimination by showing that he was (1) discharged; (2) qualified for the position; (3) within the protected class at the time of discharge; and (4) either (i) replaced by someone outside the protected class; (ii) replaced by someone younger; or (iii) otherwise discharged because of his age. *Id.* at 378. If Hinga successfully sets forth a prima facie case, the burden shifts to MIC to produce a legitimate, nondiscriminatory justification for the discharge. *See Machinchick v. PB Power, Inc.*, 398 F.3d 345, 350 (5th Cir. 2005). If MIC meets this burden, "the presumption of discrimination created by the plaintiff's prima facie case disappears and the plaintiff must meet its ultimate burden of persuasion on the issue of intentional discrimination . . . by producing evidence tending to show that the reason offered by the defendant is pretext for discrimination." *Id.* (citations omitted).

## C. Prima Facie case

The parties do not dispute that Hinga has shown the first three elements of a prima facie case of age discrimination. Hinga was qualified for the position and older than 40 when he was discharged. *See Jackson*, 602 F.3d at 378; 29 U.S.C. § 631(a). Hinga contends that he has satisfied the fourth prima facie element—that he was "otherwise discharged because of his age"—because he was treated less favorably than "nearly identical, similarly situated individuals." *Bryant v. Compass Grp. USA Inc.*, 413 F.3d 471, 478 (5th Cir. 2005).

Hinga argues that three younger employees—Billy Ashorn, Kevin Glenz, and Ronald Warzon—were similarly situated and committed similar violations, yet were not discharged. The district court concluded that these individuals were not proper comparators because they worked in different

departments, had different responsibilities, and had better disciplinary histories than Hinga.  On appeal, Hinga argues that summary judgment on this issue was improper and that the district court erred by failing to consider other factors that he says support a finding that the comparators are similarly situated.

To qualify as "similarly situated," the employees being compared generally must (1) have had the same job responsibilities; (2) have shared the same supervisor, or had their employment status determined by the same person; and (3) have comparable violation histories.  *See Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 259–60 (5th Cir. 2009).  A plaintiff must also show that "conduct that drew the adverse employment decision [was] 'nearly identical' to that of the proffered comparator who allegedly drew dissimilar employment decisions."  *Id.* at 260.  A comparator need not be entirely identical because this would impose a requirement that would be "essentially insurmountable." *Id.*  But "[i]f the difference between the plaintiff's conduct and that of those alleged to be similarly situated accounts for the difference in treatment received from the employer, the employees are not similarly situated for the purposes of an employment discrimination analysis."  *Id.* (internal quotation marks, citation, and alteration omitted).

The evidence does not support Hinga's claim that Ashorn, Glenz, and Warzon were appropriate comparators.  First, and most critical, they did not have the same job responsibilities.  MIC's actuator production followed an assembly line-type process.  In the first step, Hinga, a machinist, lapped parts used in the actuators.  The comparators, who all worked in the Assembly department, assembled the parts into actuators.  Hinga was directly and primarily responsible for lapping the parts that were used in the actuators; those parts were defective.  Ashorn, Glenz, and Warzon were responsible for assembling parts they retrieved from inventory; none had any responsibilities

No. 14-20616

as a machinist to make parts, and the assemblies were not defective.[2] *See Rodriquez v. Wal-Mart Stores, Inc.*, 540 F. App'x 322, 326 (5th Cir. 2013) (finding a manager and cashier not similarly situated because they had different job responsibilities); *Player v. Kansas City S. Ry. Co.*, 496 F. App'x 479, 482 (5th Cir. 2012) (finding a foreman dissimilar to a train engineer because "they did not perform the same functions, have the same responsibilities, or have comparable disciplinary histories"). The "striking differences" between Hinga and the comparators "more than account for the different treatment they received."[3] *Wyvill v. United Companies Life Ins. Co.*, 212 F.3d 296, 305 (5th Cir. 2000).

Neither did the comparators engage in "nearly identical" conduct. While the parties contest the extent of his inspection responsibilities, it is undisputed that Hinga, as a machinist, had at least some responsibility to check the flatness of his parts.[4] The comparators, in contrast, had no responsibility to inspect the parts for flatness. Because the parts were defectively lapped, not defectively assembled, and Hinga lapped the parts, Hinga's conduct leading to his discharge was dissimilar from the comparators' conduct. *See Hoffman v.*

---

[2] Joel Watts worked in the Final Assembly department, which is distinct from the department where the comparators worked. Unlike the comparators, Watts had an explicit responsibility to test for flatness, and his employment was also terminated.

[3] Hinga's evidence does not create a genuine issue of material fact that the comparators had the same job responsibilities. Hinga's conclusory statement that the other individuals "had similar duties and responsibilities" is not supported by the evidence. *See Rogers*, 755 F.3d at 350 (holding that summary judgment cannot be defeated by conclusory allegations). Hinga's affidavit states that he frequently assisted his fellow "team members" with various tasks, but asserts neither that he had the *duty* to assist the assembly workers, nor that they assisted him in lapping parts. Similarly, Joel Watts, who worked in Final Assembly, states in his affidavit, that he routinely assisted Ashorn, Glenz, and Warzon. But Watts does not state that he helped Hinga or that Hinga helped him.

[4] Hinga presents evidence that there were no written inspection guidelines, that he was not required to physically inspect every part, and that management approved his visual inspections. Whether Hinga satisfied his inspection responsibilities is not relevant to whether the comparators engaged in nearly identical conduct. What matters is that Hinga had some responsibility to inspect the lapped parts, while the comparators had none.

No. 14-20616

*Baylor Health Care Sys.*, 597 F. App'x 231, 233, 236–37 (5th Cir. 2015) (finding a nurse and a hospital's unit clerk "excessively dissimilar" from an MRI technician because they worked in different departments and the technician was solely responsible for complying with safety standards); *Martin v. Budget Rent-A-Car Sys. Inc.*, 432 F. App'x 407, 410 (5th Cir. 2011) ("Martin's argument that [the comparators] are similarly situated simply because they are all responsible for 'providing a service to customers' does not meet the nearly identical standard. If it did, every employee of a company would be considered to have the same job responsibilities simply by virtue of providing customer service.").

Hinga and the comparators also have different violation histories. Hinga has one prior reprimand for "skipping proper quality checks" and "not showing [a trainee] how to properly check parts during large quantity runs." He was also told to "pay more attention to quality of the product" in a 2010 performance evaluation. The record does not show that any of the comparators has any history of reprimands. *See Lee*, 574 F.3d at 261 (holding that the infraction record of employees must be "comparable" in order for them to be similarly situated).[5]

Without evidence of the same job responsibilities, nearly identical conduct, or similar violation histories, there is no prima facie case of discrimination.[6]  Because we hold that Hinga has not established a prima facie

---

[5] It is undisputed that Hinga and the comparators shared the same supervisor. This is the only factor favoring Hinga.

[6] Hinga claims that the departments in which Hinga and the comparators worked were under the same roof and in close proximity, that Hinga and each comparator worked a similar shift each day, and that Hinga and each comparator previously worked at MIC's predecessor and moved to MIC when it was acquired. We can find no reason or caselaw why these points are relevant to showing similarity for the purpose of establishing a prima facie case.

No. 14-20616

case of age discrimination, we need not address whether Hinga has shown that MIC's proffered reason for termination was pretextual.

## III. CONCLUSION

For the foregoing reasons, we AFFIRM the district court's judgment.